FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
316-267-6371

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

A BOX 4 U, LLC,                        )
d/b/a RedGuard,                        )
                                       )
         Plaintiff,                    )
                                       )
vs.                                    )  Case No.
                                       )
XP CLIMATE CONTROL, LLC,               )
                                       )
         Defendant.                    )
_____)

**COMPLAINT**

COMES NOW plaintiff, A Box 4 U, LLC, d/b/a RedGuard, and for its cause of action against the defendant, XP Climate Control, LLC, alleges and states:

1. A Box 4 U, LLC, d/b/a RedGuard (hereinafter "RedGuard") is a Kansas limited liability company with its principal place of business in Wichita, Kansas.

2. XP Climate Control, LLC (hereinafter "Climate Control") is a limited liability company with its principal place of business in Boone, North Carolina.

3. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has subject matter jurisdiction over the matter because the controversy involves citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

4. This Court has jurisdiction over the defendant Climate Control because said defendant has been doing business in the State of Kansas and has entered into contractual and other business arrangements within this State.

5. Plaintiff RedGuard is engaged in the manufacturing and sale of blast-resistant structures for use in a variety of industries. Defendant Climate Control is engaged in the manufacturing and sale of explosion-proof climate control systems for use in hazardous environments.

6. Over the past several years, RedGuard has purchased from Climate Control a number of Climate Control's systems for use in RedGuard's blast-resistant structures.

## COUNT 1

7. Almost from the beginning, RedGuard has experienced problems with Climate Control's supplying of pressurized HVAC systems to RedGuard. Climate Control has been consistently late in delivering its products to RedGuard, which delay has caused RedGuard to be late in delivery of its products to its customers. In addition, there have been repeated problems with the start-up and ongoing performance of Climate Control's pressurized HVAC systems. These performance problems have resulted in considerable out-of-pocket expense to RedGuard in order to rectify the problems and satisfy RedGuard's customers. RedGuard customers impacted by these delivery delay and performance problems include, among others, Praxair/Valero, Texas City, Texas; Holly Frontier, El Dorado, Kansas; Paulsboro Refining, Paulsboro, New Jersey; and Chiyoda, Doha, Qatar. As a result of both Climate Control's delivery and performance problems, which constitute breaches of Climate Control's contractual obligations to RedGuard, RedGuard has suffered damage to its reputation with its existing and potential customers. Moreover, RedGuard has been forced to considerable expense to correct Climate Control's deficiencies. RedGuard's actual damages exceed $75,000, and the specific amount of such damages will be established at the trial of this matter.

## COUNT 2

8.      Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, plaintiff RedGuard seeks a declaratory judgment as to the matters set forth below.

9.      Beginning in February 2014, Climate Control has made repeated demands concerning RedGuard's purported misuse of Climate Control's alleged proprietary information. Examples of these demands include correspondence from Climate Control's attorney dated February 21, 2014, May 2, 2014, and May 22, 2014, all of which are attached hereto as Exhibit A and incorporated herein by reference.

10.     RedGuard denies that it has improperly used any purported proprietary information belonging to Climate Control.  Climate Control's repeated claims regarding these matters have caused disruption to RedGuard's business, and RedGuard is entitled to have these issues adjudicated by this Court.

11.     By reason of the matters set forth herein, an actual controversy exists between RedGuard and Climate Control, and, pursuant to 28 U.S.C. § 2201, RedGuard is entitled to have its rights determined by this Court in the form of a declaratory judgment.

12.     RedGuard respectfully asks that this Court issue a declaratory judgment, finding and declaring that RedGuard has not breached any obligations under any Non-Disclosure Agreement and that RedGuard has not improperly used any purported proprietary information belonging to Climate Control.

WHEREFORE, RedGuard requests that this Court enter judgment in RedGuard's favor on the causes of action set forth above, that RedGuard be awarded its costs, and for such other and further relief as the Court deems just and equitable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Wichita, Kansas, as the place of trial of this cause of action.

*s/James M. Armstrong*
James M. Armstrong, KS #09271
FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
316-291-9576
866-936-1936 (fax)
jarmstrong@foulston.com
*Attorneys for Plaintiff*

# EXHIBIT A

# WDW

## WALKER DIVENERE WRIGHT
ATTORNEYS AT LAW

---

783 WEST KING STREET, BOONE, NORTH CAROLINA 28607    (P) 828.268.9640   (T) 800.451.4299   (F) 828.262.3699    www.lawyernorthcarolina.com

---

| JEFFREY J. WALKER, Esq. | TAMARA C. DiVENERE, Esq. | ANNÉ C. WRIGHT, Esq. |
|---|---|---|
| jwalker@jjwpa.com | tdivenere@jjwpa.com | awright@jjwpa.com |

February 21, 2014

Phillip Lange
Senior/Capital Projects Manager
A Box 4 U/RedGuard
401 W. 47th St. S.
Wichita, KS 67217

                                        Sent via email to: phillipl@abox4u.net, phillipl@redguard.com

RE: Climate Control CEASE AND DESIST

Dear Mr. Lange:

In December of 2012, you and I corresponded regarding the Non-Disclosure Agreement that my client, Climate Control, required your company to execute prior to sharing his proprietary design information with you. After review of the document I proposed, the Non-Disclosure Agreement was executed. You are now in violation of that Non-Disclosure Agreement and my client has authorized me to make a one-time offer to you to resolve this situation before resorting to litigation.

You agreed that any use of the confidential information of Climate Control would be used **only** and **solely** in connection with the business between you and Climate Control. Unfortunately, Mr. Knight has informed me that your organization has been reverse engineering his design, an activity that is not related to the work you and Climate Control are doing together. Therefore, I must insist that you immediately **CEASE and DESIST** this reverse engineering and any other manufacturing, research, and/or other work that involves copying Mr. Knight's designs, attempting to recreate Mr. Knight's designs, or any other activity that falls outside the scope of the limitations you agreed to in the Non-Disclosure Agreement signed December 20, 2012.

Furthermore, I must insist that the prototype you have built copying Mr. Knight's designs be returned to him within ten (10) days of the date of this letter. I have enclosed pictures of the prototype taken by Mr. Knight at your facility on or about February 11, 2014 for your reference. This prototype is identical to those systems produced by Climate Control and there is no doubt as to the origin of the design.

You must also return any and all other tangible work items related to reverse engineering, copying, or any other activity regarding Mr. Knight's designs that falls outside of the scope of your business relationship with Mr. Knight. In paragraph 3 of the Non-Disclosure Agreement, you agreed that all use of the confidential information shared with your organization would be for the benefit of Climate Control and that any modifications or improvements thereof shall be the sole property of Climate Control. In paragraph 7, you agreed to return any and all tangible material embodying the Confidential Information shared with you, including derivative information deriving from the Confidential Information IMMEDIATELY UPON CLIMATE CONTROL'S REQUEST. This is such a request.

---

| LEGAL ASSISTANTS | KELLY T. BOWLSBEY, NCCP | AMANDA B. GRIMES, CP | LETICIA M. POTTER | EMILY N. PROSHUTO | STACY R. RANKIN, NCCP |
|---|---|---|---|---|---|
| | kbowlsbey@jjwpa.com | agrimes@jjwpa.com | lpotter@jjwpa.com | eproshuto@jjwpa.com | srankin@jjwpa.com |

| OFFICE ADMINISTRATORS | ALISON L. CROWE | DONNA M. WALKER |
|---|---|---|
| | acrowe@jjwpa.com | dwalker@jjwpa.com |

In addition to the return of the items described herein, Climate Control must have additional assurances that nothing of this type will occur again. To that end, I have enclosed an Addendum to the Non-Disclosure Agreement requiring acknowledgement that all the items requested herein have been returned to Climate Control and that no other violations of the Non-Disclosure Agreement will occur. Furthermore, the Addendum extends the term of the Non-Disclosure Agreement and adds a liquidated damages clause.

You acknowledged in the Non-Disclosure Agreement that the information shared with you by Mr. Knight and Climate Control was proprietary, confidential information and that your organization would be responsible for any breach. Moreover, the Agreement states that violation of the Non-Disclosure Agreement constitutes irreparable harm and that Climate Control is entitled not only to Injunctive Relief but also to its fees and costs, including attorneys' fees, incurred in obtaining that Relief. If the items and information described herein are not returned to Mr. Knight within ten (10) days of the date of this letter and if the enclosed Addendum is not executed by that same time, Climate Control will seek legal remedy without delay. I have advised my client as to the remedies available at law and at equity, including injunctive relief requesting the court order the stoppage of your operations in any way related to Climate Control and a lawsuit for breach of contract, fraud, unfair and deceptive trade practices, and punitive damages. Climate Control plans to seek treble damages and attorneys' fees under Chapter 75 of the North Carolina General Statutes.

If this situation is immediately remedied as requested in this correspondence, my client is willing to give you the benefit of the doubt and continue to do business together. However, if you cannot make this gesture of good faith and fair play, Climate Control will have no choice but to file suit. Upon receipt of this letter, you may contact my client to make arrangements for the return of the items described in this letter. The enclosed Addendum can be returned to me at the address above.

Regards,

*Anné C. Wright*

Anné C. Wright

ACW/abg
Enclosure

cc: Will Knight

## Addendum to Non-Disclosure Agreement

WHEREAS, on or about December 20, 2012, Climate Control XP, LLC d/b/a Climate Control and A Box 4 U entered into a Non-Disclosure Agreement wherein Climate Control was the Disclosing Party and A Box 4 U was the Receiving Party; and

WHEREAS, certain actions on the part of A Box 4 U have caused concern for Climate Control regarding compliance with said Non-Disclosure Agreement, those actions being described in that certain letter from Anné Wright, attorney for Climate Control, to Phillip Lange, Senior Project Manager for A Box 4 U, dated February 21, 2014, said letter being incorporated herein as if fully set out and contained in this Addendum; and

WHEREAS, in order to preserve the ongoing business relationship between the parties, A Box 4 U has agreed to additional provisions of the Non-Disclosure Agreement to provide reasonable and needed assurance to Climate Control.

THEREFORE, for valuable consideration, the receipt and sufficiency of which is acknowledged by the parties hereto, the parties agree as follows:

1. A Box 4 U warrants and represents that all items, documents, and information which Climate Control has requested to date have been returned to Climate Control, including but not limited to: the prototype referenced in the February 21, 2014 letter described above as well as any and all other tangible work items related to reverse engineering, copying, or any other activity regarding Mr. Knight's designs that falls outside of the scope of what is allowed by the subject Non-Disclosure Agreement.

2. A Box 4 U warrants and represents that it has engaged in activity in violation of the Non-Disclosure Agreement and that no further violations of the Non-Disclosure Agreement will occur by A Box 4 U, its agents, representatives, assigns, employees, or others within its control.

3. In case of unauthorized use or disclosure of the confidential information as defined in the Non-Disclosure Agreement, the Disclosing Party shall be entitled to liquidated damages in the amount of twenty-five thousand dollars ($25,000) for each such use or disclosure. Notwithstanding the right to liquidated damages, the disclosing party has the right to take any measures available and to claim and receive a higher amount of compensation if the Disclosing Party can prove that the actual damage sustained will exceed the amount of liquidated damages.

4. The term of the Non-Disclosure Agreement is extended to two (2) years from the execution of this Addendum and may be extended an additional year at the Disclosing Party's request.

5. Any and all other provisions of the Non-Disclosure Agreement remain in full force and effect. In the event of a conflict between the Non-Disclosure Agreement and this Addendum, this Addendum shall control.

**Disclosing Party: Climate Control XP, LLC**       **Receiving Party: A Box 4 U/RedGuard**

By: _Will    Knight, Owner_                         By: _Phillip Lange, Senior/Capital Projects Mgr._

DATE: _____                        DATE: _____

















# WDW

## WALKER DiVENERE WRIGHT
ATTORNEYS AT LAW

783 WEST KING STREET, BOONE, NORTH CAROLINA 28607    (P) 828.268.9640   (T) 800.451.4299   (F) 828.262.3699     www.lawyernorthcarolina.com

| JEFFREY J. WALKER, Esq. | TAMARA C. DiVENERE, Esq. | ANNÉ C. WRIGHT, Esq. |
|---|---|---|
| jwalker@jjwpa.com | tdivenere@jjwpa.com | awright@jjwpa.com |

May 2, 2014

James M. Armstrong
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466

       RE: Climate Control/A Box 4 U/Red Guard

Dear Mr. Armstrong:

You will recall that we exchanged correspondence concerning a confidentiality and non-disclosure agreement that your client Red Guard (formerly, A Box 4 U), executed in favor of my client, Climate Control. Our last exchange, an email from me to you on March 11, 2014, stated that my client wished to try resolving the existing issues with your client directly before resorting to further legal action.

Unfortunately, my client has not received prompt or satisfactory responses to reasonable requests made to Darren Hillman, the General Manager of Red Guard, and so must now revive the previous demands contained in my letter to Phillip Lange dated February 21, 2014. A copy of this correspondence and the relevant Addendum are enclosed for your convenience.

In an email on April 2, 2014 from Darren Hillman to Will Knight of Climate Control, Mr. Hillman writes the following regarding the Addendum to the Non-Disclosure Agreement that Climate Control has asked Red Guard to execute: "we have drafted a nice clean commercial agreement that covers both parties very well and we have been having all of our vendors and contractors work with it. Instead of working off on old NDA and signing addendums, we were thinking that might be the way to go to start fresh moving forward."

My client requested a copy of this proposed commercial agreement so that it could be reviewed by counsel and has yet to receive it. If your client has a proposed alternative to the Addendum Climate Control has provided, please email or fax it to me for review without delay. Otherwise, my client must insist that the Addendum already provided be signed. The products and services which Climate Control provides are in high demand and they do not have time to waste. If Red Guard is willing to provide the requested assurances, then the parties can move on and continue to do business together. However, if Red Guard is not willing to provide these assurances, the trust between the parties will be significantly eroded to the point my client will no longer feel comfortable partnering with Red Guard. In this case, I will advise my client as to the legal remedies necessary to protect its business interests from past and future breaches of Red Guard.

Sincerely,

*Anné C. Wright*

Anné C. Wright

ACW/srr

Enclosures

| LEGAL ASSISTANTS | KELLY T. BOWLSBEY, NCCP<br>kbowlsbey@jjwpa.com | AMANDA B. GRIMES, CP<br>agrimes@jjwpa.com | LETICIA M. POTTER<br>lpotter@jjwpa.com | EMILY N. PROSHUTO<br>eproshuto@jjwpa.com | STACY R. RANKIN, NCCP<br>srankin@jjwpa.com |
|---|---|---|---|---|---|
| OFFICE ADMINISTRATORS | ALISON L. CROWE<br>acrowe@jjwpa.com | DONNA M. WALKER<br>dwalker@jjwpa.com | | | |

# WDW

## WALKER DIVENERE WRIGHT
ATTORNEYS AT LAW

783 WEST KING STREET, BOONE, NORTH CAROLINA 28607     (P) 828.268.9640   (T) 800.451.4299   (F) 828.262.3699     www.lawyernorthcarolina.com

JEFFREY J. WALKER, Esq.  
jwalker@jjwpa.com

TAMARA C. DIVENERE, Esq.  
tdivenere@jjwpa.com

ANNÉ C. WRIGHT, Esq.  
awright@jjwpa.com

May 22, 2014

James M. Armstrong  
Foulston Siefkin LLP  
1551 N. Waterfront Parkway, Suite 100  
Wichita, Kansas 67206-4466

   RE: Climate Control/A Box 4 U/RedGuard

Dear Mr. Armstrong:

I have reviewed the proposed Standard Terms and Conditions of Purchase for Goods and/or Services for RedGuard with my client. There are some provisions of this proposed agreement to which Climate Control cannot agree. Specifically, Climate Control cannot agree to any merger clause or other provision which could potentially invalidate the Non-Disclosure Agreement already entered into by these parties. I have indicated my requested changes, deletions, and edits on the attached Word document.

Furthermore, as there is nothing in the proposed Purchase agreement which addressees my client's ongoing concerns regarding the confidentiality of Climate Control's proprietary information, it is imperative that RedGuard execute the Addendum to the Non-Disclosure Agreement which I have previously provided but am enclosing here for your convenience.

If RedGuard has destroyed the objectionable prototype and other materials, then I believe the Addendum can be changed to reflect the same before being signed by the parties so long as RedGuard warrants that the materials have been destroyed. RedGuard has indicated that they have not breached the Non-Disclosure Agreement and have no intention of doing so. As such, there should be no reason they cannot provide the requested reassurances and execute the Addendum. RedGuard's curious refusal to do this is eroding my client's confidence in RedGuard's trustworthiness. If Climate Control is not given the assurances it has requested, including the execution of the Addendum to the Non-Disclosure Agreement by the end of this month, it will have no choice but to protect its valuable proprietary information by filing suit without delay to enforce the terms of the Non-Disclosure Agreement. The offer to avoid immediate lawsuit by execution of the Addendum will expire at 5:00 pm on May 30, 2014.

Sincerely,

*Anné C. Wright*

Anné C. Wright  
ACW/srr

Enclosures

LEGAL ASSISTANTS    KELLY T. BOWLSBEY, NCCP    AMANDA B. GRIMES, CP    LETICIA M. POTTER    EMILY D. PROSHUTO    STACY R. RANKIN, NCCP  
        kbowlsbey@jjwpa.com    agrimes@jjwpa.com    lpotter@jjwpa.com    eproshuto@jjwpa.com    srankin@jjwpa.com

OFFICE ADMINISTRATORS    ALISON L. CROWE    DONNA M. WALKER  
        acrowe@jjwpa.com    dwalker@jjwpa.com

# A BOX 4 U, LLC, dba REDGUARD
## STANDARD TERMS AND CONDITIONS OF PURCHASE FOR GOODS AND/OR SERVICES

### 1. APPLICABLE TERMS

These Standard Terms and Conditions of Purchase for Goods and Services ("*Terms and Conditions*") apply to all orders placed and purchases made by A Box 4 U, LLC, doing business as RedGuard ("*RedGuard*") for goods, material, and equipment purchased from Seller (collectively, "*Goods*") or services to be performed by Seller ("*Services*") on or after April 22, 2014. RedGuard will not be bound by the purchase order issued by RedGuard ("*Purchase Order*") until RedGuard has received the acknowledgement copy of this Purchase Order signed by Seller. These Terms and Conditions are hereby incorporated in all Purchase Orders by reference. Seller will be bound by the Terms and Conditions, and any specific terms on the face of the Purchase Order, when it signs and returns the acknowledgement copy of the Purchase Order, delivers any of the goods ordered by RedGuard, or initiates any services ordered by RedGuard.

Seller hereby accepts and agrees to these Terms and Conditions, and any specific terms on the face of the Purchase Order, ~~and~~ but does not waives any conflicting or additional provisions contained in Seller's forms. ~~Any provision, printed or otherwise, contained in any acceptance, confirmation, or acknowledgement issued by Seller that is inconsistent with, different from, or in addition to these Terms and Conditions is hereby expressly rejected by RedGuard and will not be considered as part of the agreement between Seller and RedGuard.~~ In the event of any inconsistency or discrepancy between these Terms and Conditions, the terms of any Purchase Order, and the terms of Seller's forms, the terms in Seller's forms shall control.

### 2. PRICE AND PAYMENT

Unless otherwise specified in the Purchase Order or otherwise agreed by the parties in writing, all prices quoted to RedGuard are firm and will not be subject to change. RedGuard will provide a sales tax exemption certificate to Seller with respect to any Goods or Services purchased and no sales tax will be included in the price. All other taxes and duties arising from the sale of the Goods or performance of Services to RedGuard will be included in the price and will be separately identified on Seller's quotation.

Invoices will be payable within thirty (30) days of Goods delivery and/or accepted completion of the Services rendered, as well as receipt of a correct and complete invoice by RedGuard. Unless otherwise requested by RedGuard, invoices will cover only one Purchase Order and include the Purchase Order number. If the invoice is subject to a cash discount, the discount period will be calculated from the date the invoice is received by RedGuard.

### 3. WARRANTIES

**Goods** – Seller represents and warrants that all Goods sold to RedGuard under this Purchase Order will (a) be new and of merchantable quality, not used, rebuilt, or made of refurbished materials unless expressly approved by RedGuard in writing; (b) be free from all defects in design, workmanship, and materials, and be fit for the particular purpose for which they are intended; (c) meet all specifications and requirements of the Purchase Order; (d) conform to any sample or any specifications, drawings, or other description furnished to or adopted by RedGuard; (e) be produced, fabricated, manufactured, sold, and delivered in compliance with all applicable state and federal laws; and (f) be free of all liens, claims, security interests, and encumbrances. Seller will assign to RedGuard any manufacturer's or other warranties applicable to the goods and will cooperate with and assist RedGuard in the enforcement of any warranties passed through to RedGuard, provided Seller will remain responsible for meeting and fulfilling all warranties under the Purchase Order. Seller will provide all necessary permits, certificates, and material safety data sheets, ~~and other documentation~~ required with respect to the Goods ~~or as may be specifically required by RedGuard~~. Should any failure to conform to this warranty be discovered ~~within eighteen (18) months from the date of initial operation and use, or~~ within ~~twenty-four~~ twelve (~~12~~24) months from the date of delivery, whichever occurs later, Seller will, as directed by RedGuard, promptly repair or replace the defective Goods. These remedies will not constitute the sole remedies of RedGuard, but will be in addition to any rights or remedies available under applicable law.

**Services** – Seller will perform all Services as an independent contractor and will have sole responsibility for all payroll taxes, contributions payable under any applicable local, state, or federal law, workers' compensation, and employee benefits associated with any of Seller's employee providing the Services. Seller represents and warrants that (a) all Services will be performed in a good, safe, and workmanlike manner, in conformity with ~~the highest~~ industry standards, methods, and practices, including applicable environmental, health and safety laws, and that the Services will be free from defects in workmanship and be performed in ~~strict~~ compliance with all requirements of the Purchase Order; and (b) all Goods, if any, used in the performance of the Services will meet the warranty requirements stated above and will be free of all liens, claims, security interests, and encumbrances. Seller

will, at its sole cost and expense, correct, re-perform, replace, repair, or otherwise remedy, as directed by RedGuard, any Services or Goods that fail to conform to the foregoing warranty, and any resulting damage or corrective services caused as a result. These remedies will not constitute the sole remedies of RedGuard, but will be in addition to any rights or remedies available under applicable law.

4. **DELIVERY, SHIPPING TERMS, INSPECTION, AND PASSAGE OF TITLE**

The shipping terms, risk of loss, and date of delivery will be specified in the Purchase Order. Seller will provide immediate written notice to Redguard at least two weeks prior to the PO due date if any delay is foreseeable. When possible, Redguard will adjust Project dates to accommodate a delay. Should Seller fail to complete delivery of the Goods by the date specified, Redguard retains the right to collect a Late Penalty in the amount of 5% of each late PO line item value. RedGuard will not be required to make any payment to Seller for any Goods shipped by Seller in advance of the specified shipping date until the date specified in the Purchase Order. Seller will pay all excess charges resulting from its failure to ship and route the delivery by the least expensive way or as instructed by RedGuard, and will reimburse RedGuard for any excess charges paid by RedGuard.

~~All Goods will be subject to inspection or verification by RedGuard or its authorized representative at any time during the period of manufacture, prior to shipment, and at the delivery point, notwithstanding any prior payment, inspection, or delivery terms. RedGuard and its authorized representatives will be permitted during normal business hours to have access to and visit Seller's facilities or the facilities of any subcontractor or vendor, to inspect the Goods and to verify and determine whether the required standards of qualify and workmanship are being met by Seller. Inspection by RedGuard or its authorized representative, failure of RedGuard or its representative to make adequate inspection, or acceptance by RedGuard will in no event limit or discharge Seller of its obligations to comply with the Terms and Conditions and the specific terms of the Purchase Order. PAYMENT FOR ANY GOODS OR SERVICES BY RedGuard WILL NOT BE DEEMED ACCEPTANCE.~~ Seller agrees to accommodate reasonable requests for Factory Acceptance Tests (FAT) and related testing as needed. ALL RISK OF LOSS OR DAMAGE TO THE GOODS WILL REMAIN SELLER'S SOLE RESPONSIBILITY UNTIL THE GOODS ARE DELIVERED TO ~~AND ACCEPTED BY~~ RedGuard AT THE DELIVERY POINT SPECIFIED IN THE PURCHASE ORDER, UNLESS OTHERWISE AGREED IN WRITING BY RedGuard AND SELLER.

Title to the Goods will pass to RedGuard no later than the time of delivery provided that the passage of title will not prejudice either the right of RedGuard to reject nonconforming Goods or any other right RedGuard may otherwise have. In those cases where advances or progress payments have been made, title, but not risk of loss or damage, will pass to RedGuard as soon as the Goods are identified to the Purchase Order. All Goods so identified will be adequately marked and recorded as being the property of RedGuard.

Each package will be numbered and labeled with the Purchase Order number, contain an itemized packing list, material safety data sheet, if applicable, and be properly packaged against damage and deterioration. No charges of any kind, including charges for inspection, packaging, crating, freight, express, or cartage will be allowed unless expressly specified on the face of the Purchase Order. Unless otherwise provided in the Purchase Order, all containers and packing supplied by Seller will be considered as non-returnable and the cost of the containers and packing will be included in the price.

5. **FORCE MAJEURE**

In the event of any act, delay, or failure to act by a federal, state, or local government, war conditions, civil unrest or political disturbances, fire, flood or other natural disaster, act of terrorism, labor or manufacturing troubles in any fabrication facility, or any other circumstances beyond the control of Seller or RedGuard, should prevent, curtail, or delay the performance by Seller or RedGuard of the provisions of the Purchase Order, then such non-performance or delay will not be considered a breach of the Purchase Order provisions and the affected party will be excused while such condition or circumstances and their consequences prevail, and the affected party's time to perform will be extended accordingly.

6. **INDEMNIFICATION**

Seller will defend, indemnify and hold harmless RedGuard and its customers, and their respective affiliates, subsidiaries, officers, directors, agents, and employees, from and against all liability, claims, damages, costs, losses and expenses, including reasonable attorney fees and court costs, of any kind or nature from any party related to or arising out of (a) any breach of the Terms and Conditions and any specific terms of the Purchase Order; and (b) death, personal injury, or property damage resulting from any breach of warranty, defect, repair, or replacement with respect to any Goods provided and Services performed by Seller, except to the extent attributable to the gross negligence or ~~willful~~ misconduct of RedGuard.

## 7. INSURANCE

Unless otherwise specified in the Purchase Order, for all Purchase Orders for Goods and/or Services in excess of $5,000.00, Seller will maintain the following insurance coverage: (a) Comprehensive General Liability in the minimum amount of $1,000,000.00 per occurrence for bodily injury and property damage, including products liability, completed operations liability, and contractual liability covering Seller's indemnification obligations; (b) Professional Liability in the minimum amount of $1,000,000.00 per occurrence; (c) Workers' Compensation with limits as required by applicable state law; (d) Employer's Liability in the minimum amount of $1,000,000.00 per occurrence; and (e) Automobile Liability in the minimum amount of $1,000,000.00 per occurrence. All policies will provide for a blanket waiver of subrogation. All policies other than the Workers' Compensation policy will name RedGuard as an additional insured. Prior to shipment of Goods or performance of Services pursuant to a Purchase Order, Seller will provide RedGuard with a certificate of insurance evidencing the coverage required, including the waiver of subrogation and naming of RedGuard as an additional insured, and will provide for a minimum of thirty (30) days advance written notice to RedGuard of any cancellation or change in coverage. The required coverage will primary and noncontributing to any insurance maintained by RedGuard, and will not serve in any way to limit Seller's liability to RedGuard.

## 8. CONSEQUENTIAL DAMAGES

IN NO EVENT, WILL RedGuard OR SELLER BE RESPONSIBLE FOR ANY LOST PROFITS OR OTHER ECONOMIC LOSS, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND, WHETHER ARISING UNDER WARRANTY, CONTRACT, NEGLIGENCE, GROSS NEGLIGENCE, STRICT LIABILITY, INDEMNIFICATION, OR ANY OTHER CAUSE OR COMBINATION OF CAUSES WHATSOEVER.

## 9. CHOICE OF LAW, ARBITRATION, AND VENUE

All disputes concerning validity, interpretation, and application of these Terms and Conditions and the Purchase Order will be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of Kansas, applicable to agreements made and to be performed wholly within the State of Kansas, without regard to other principles and choice of law, except to the extent the laws of United States shall apply. The parties disclaim any applicability of the United Nations Convention on the International Sale of Goods.

In the event any dispute, controversy, claim, or disagreement arising out of or relating to the Purchase Order, or the breach thereof by either party, the parties will use their reasonable commercial efforts to resolve the matter as quickly as possible. To this effect, they will consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties. ~~If the parties do not reach a solution within sixty (60) days, then upon written notice by either party to the other, the dispute, controversy, claim, or disagreement will be resolved and settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules (including the Optional Rules for Emergency Measures of Protection). A reasoned written award will be required and will be made within nine months of the filing of the notice to arbitrate and the arbitrator(s) will agree to comply with this scheduled before accepting appointment. The arbitrator(s) will have no authority to award consequential damages (as disclaimed in Section 10) or punitive damages to either party, but will have the authority to award the payment of attorney fees and costs to the prevailing party. The award rendered will be final and binding on the parties. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitration will be conducted in the English language in Wichita, Kansas, in accordance with the United States Arbitration Act. Seller expressly agrees it will not bring any claim, action, suit, or other legal proceeding pertaining to the Purchase Order, the Goods, and/or Services in any other forum or venue.~~

Any notice of dispute, controversy, claim, or disagreement or the submission of such dispute, controversy, claim, or disagreement to arbitration may be served upon the parties as provided for notices in Section 14. Delivery by mail service will have the same force and effect as personal service within the State of Kansas.

## 10. TERMINATION

~~**Termination for Convenience** – RedGuard may terminate the Purchase Order at any time by written notice to Seller, as specified in the notice. Payment for delivered Goods or Services performed at the time of termination will be made at the price specified in the Purchase Order. Any Goods that were not made-to-order or custom and designed and fabricated may be returned to Seller and a full refund will be provided to RedGuard, less any standard restocking charge.~~

**Termination for Default** – RedGuard may terminate this Purchase Order in whole or part by written notice of default to Seller, without any liability to Seller, if: (a) Seller fails to deliver or perform within the time

s specified or any written extension granted by RedGuard; (b) Seller fails to make progress, which in the reasonable judgment of RedGuard, endangers performance of the Purchase Order in accordance with its terms; (c) Seller fails to comply with any Terms and Conditions or any specific terms of the Purchase Order; or (d) a petition for bankruptcy is filed by or against Seller, a general assignment for the benefit of Seller's creditors is entered into, a receiver is appointed with respect to the insolvency of Seller. Notice of termination will be effective as specified in the notice.

### 11. NON-ASSIGNABILITY
Neither party may assign their rights and obligations under any Purchase Order issued by RedGuard without the prior written consent of the other party.

### 12. NOTICES
Any consent, agreement, or notice required or permitted to be given or made by one of the parties to the other party will be in writing and in the English language and will be delivered in person, by registered or certified mail, electronic mail, or by Federal Express (or other recognized international courier service requiring signature upon receipt). Such notice will be effective upon receipt. Addresses and designated contact names will be set forth in the Purchase Order and such addresses and designated contact names may be modified from time to time, by written notice to the other party, given in the aforesaid manner.

### 13. SEVERABILITY
It is intended that each provision of these Terms and Conditions and the specific terms of the Purchase Order will be viewed as separate and divisible, and that in the event any provision is held to be invalid, the remaining provisions will continue in full force and effect.

### 14. BINDING ON SUCCESSORS
The Purchase Order will be binding upon and inure to the benefit of the parties hereto and their heirs, successors, administrators, and assigns as herein provided.

### 15. MODIFICATION AND WAIVER
No change, modification, or waiver to any terms or scope of any order will be binding and valid unless it is accepted in writing and signed by both parties. No waiver of any of the provisions of these Terms and Conditions or the specific terms of the Purchase Order will be deemed or constitute, waiver of any other provision, whether or not similar, nor will any waiver constitute a continuing waiver.

### ~~16. PRIOR AGREEMENTS~~
~~The Purchase Order supersedes and replaces all prior agreements, representations and warranties, written or oral, with respect to the Goods or Services purchased under the Purchase Order. No course of dealing and no usage of trade will be relevant to determine the meaning of the Purchase Order even though the accepting or acquiescing party has knowledge of the performance and opportunity to object.~~

**Supplier Name:** _____

Authorized Signer: _____  Title: _____

Date: _____

RedGuard Signer: _____  Title: _____

Date: _____

## Addendum to Non-Disclosure Agreement

WHEREAS, on or about December 20, 2012, Climate Control XP, LLC d/b/a Climate Control and A Box 4 U entered into a Non-Disclosure Agreement wherein Climate Control was the Disclosing Party and A Box 4 U was the Receiving Party; and

WHEREAS, certain actions on the part of A Box 4 U have caused concern for Climate Control regarding compliance with said Non-Disclosure Agreement, those actions being described in that certain letter from Anné Wright, attorney for Climate Control, to Phillip Lange, Senior Project Manager for A Box 4 U, dated February 21, 2014, said letter being incorporated herein as if fully set out and contained in this Addendum; and

WHEREAS, in order to preserve the ongoing business relationship between the parties, A Box 4 U has agreed to additional provisions of the Non-Disclosure Agreement to provide reasonable and needed assurance to Climate Control.

THEREFORE, for valuable consideration, the receipt and sufficiency of which is acknowledged by the parties hereto, the parties agree as follows:

1. A Box 4 U warrants and represents that all items, documents, and information which Climate Control has requested to date have been returned to Climate Control, including but not limited to: the prototype referenced in the February 21, 2014 letter described above as well as any and all other tangible work items related to reverse engineering, copying, or any other activity regarding Mr. Knight's designs that falls outside of the scope of what is allowed by the subject Non-Disclosure Agreement.

2. A Box 4 U warrants and represents that it has engaged in activity in violation of the Non-Disclosure Agreement and that no further violations of the Non-Disclosure Agreement will occur by A Box 4 U, its agents, representatives, assigns, employees, or others within its control.

3. In case of unauthorized use or disclosure of the confidential information as defined in the Non-Disclosure Agreement, the Disclosing Party shall be entitled to liquidated damages in the amount of twenty-five thousand dollars ($25,000) for each such use or disclosure. Notwithstanding the right to liquidated damages, the disclosing party has the right to take any measures available and to claim and receive a higher amount of compensation if the Disclosing Party can prove that the actual damage sustained will exceed the amount of liquidated damages.

4. The term of the Non-Disclosure Agreement is extended to two (2) years from the execution of this Addendum and may be extended an additional year at the Disclosing Party's request.

5. Any and all other provisions of the Non-Disclosure Agreement remain in full force and effect. In the event of a conflict between the Non-Disclosure Agreement and this Addendum, this Addendum shall control.

**Disclosing Party: Climate Control XP, LLC**         **Receiving Party: A Box 4 U/RedGuard**

By: Will     Knight, Owner                            By: Phillip Lange, Senior/Capital Projects Mgr.

DATE:                                                  DATE: